RENE VALLADARES
Federal Public Defender
MONIQUE N. KIRTLEY
Assistant Federal Public Defender
411 East Bonneville, Suite 250
Las Vegas, Nevada 89101
(702) 388-6577
(Fax) 388-6261

Counsel for LINDA LIVOLSI

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>vs.<br><br>LINDA LIVOLSI,<br><br>                    Defendant. | Case No. 2:10-CR-00578-APG-PAL<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

CERTIFICATION: This memorandum is timely filed.

        COMES NOW the defendant, LINDA LIVOLSI, (hereinafter "Ms. Livolsi"), by and through her counsel, Monique Kirtley, Assistant Federal Public Defender, and hereby submits this Sentencing Memorandum in connection with her sentencing presently scheduled for Tuesday, April 21, 2015, at 10:30 a.m.

        DATED this 14th day of April, 2015.

                                        RENE VALLADARES
                                        Federal Public Defender


                                By:    /s/ Monique Kirtley
                                        MONIQUE KIRTLEY
                                        Assistant Federal Public Defender

1

## ARGUMENTS IN MITIGATION OF SENTENCE

"Sentencing is an art, not to be performed as a mechanical process but as a sensitive response to a particular person who has a particular personal history and has committed a particular crime." **U.S. v. Harris**, 679 F.3d 1179, 1183 (9th Cir. 2012).

Ms. Livolsi's guilty plea to Wire Fraud (Count 2) and False and Fraudulent Tax Returns (Count 4) are but one part of the history and characteristics of the defendant to be considered by this Court when sentencing. *See* 18 U.S.C. § 3553(a); 18 U.S.C. § 3661 ("no limitation shall be placed on the information concerning the background, character and conduct of the defendant which a court may receive and consider for the purposes of imposing an appropriate sentence."); *United States v. Booker*, 543 U.S. 220, 249-250, 125 S. Ct. 738, 759 (2007)(citing § 3553(a) and S. Rep. No. 98-225, p. 53 (1983) requiring the judge to make "a comprehensive examination of the characteristics of the particular offense and the particular offender"). The Supreme Court found the factors listed in 18 U.S.C. § 3553(a) so important, it attached that section of the statute as an Appendix to *Booker*. *Id.* at 268-270, S. Ct. 769-770.

In considering imposing "a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2", Section 3553(a)(2) states that such purposes are:

(A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)    to afford adequate deterrence to criminal conduct;
(C)    to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care

Section 3553(a) further directs sentencing courts to consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (3) the kinds of sentences available; as well as (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. The guidepost for appellate courts in determining a reasonable sentence is one which adheres to the statutory directive that the "court shall impose a sentence sufficient, but not greater than necessary, to comply" with the plethora of factors outlined in 18 U.S.C. § 3553(a). In other words, "*Booker* is not an invitation to do business as usual." *United States v. Ranum*, 353 F.Supp. 2d 984 (E.D.Wis. 2005).

2

1    Many of the factors detailed under 18 U.S.C. § 3553(a) are of the type which the

2    Sentencing Guidelines either reject or completely ignore.  For example, under 18 U.S.C. § 3553(a)(1)

3    a sentencing court must consider the "history and characteristics of the defendant." However, under

4    the Sentencing Guidelines, courts are generally prohibited from considering many of these

5    characteristics, such as the defendant's age (U.S.S.G. § 5H1.1); educational and vocational skills

6    (U.S.S.G. § 5H1.2); mental and emotional condition (U.S.S.G. § 5H1.3); physical condition

7    including drug or alcohol dependence (U.S.S.G. § 5H1.4);  employment record (U.S.S.G. § 5H1.5);

8    family ties and responsibilities (U.S.S.G. § 5H1.6) and socio-economic status (U.S.S.G. § 5H1.10).

9    Inasmuch as the Sentencing Guidelines prohibit consideration of any of these factors,

10   they deter a sentencing court from applying those very same factors which *Booker* suggests are

11   necessary in determining a "reasonable sentence."  In cases in which a defendant's history and

12   character are positive, consideration of all of the factors listed under 18 U.S.C. § 3553(a) might call

13   for a sentence outside the range established by the Sentencing Guidelines.

14   In *Pepper v. United States*, 131 S.ct. 1229 (2011) the Court emphasized the need for

15   individualized sentencing based not only on the crime but on the defendant.  The fundamental

16   governing consideration for district court in sentencing is the directive of Congress that the district

17   court "shall impose a sentence sufficient, but not greater than necessary, to comply with the

18   [purposes of sentencing].  *Pepper v. United States*, 131 S.Ct. 1229, 1240 (2011)(quoting *Williams*

19   *v, New York*, 337 U.S. 241, 247 (1949)).; *United States v. Chavez*, 611 F.3d 1006, 1010 (9th Cir.

20   2010)(explaining that § 3553(a)'s parsimony clause expresses "an overarching principle [that]

21   necessarily informs a sentencing court's consideration of the entire constellation of section 3553(a)

22   factors"(alteration in original, quotation marks omitted)).

23   *Pepper*, *Booker*, *Gall*, and *Kimbrough* "empowered district courts, not appellate courts . . . . [and

24   have] breathe[d] life into the authority of district court judges to engage in individualized

25   sentencing." *U.S. v. Whitehead*, 532 F.3d 991 (9th Cir. 2008); *U.S. v. Vonner*, 516 F.3d 382, 392 (6th

26   Cir. 2008) (en banc) ("The sentencing court must not be "so appalled by the offense that it los [es]

27   sight of the offender" and "the record [must] reflect the required consideration of "the

28   history and characteristics of the defendant," 18 U.S.C. § 3553(a) (1).

Factors exist here that support a downward adjustment from the sentencing range which would result in a sentence that is "sufficient, but not greater than necessary" to address the factors of 18 U.S.C. § 3553. *See Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 599 (2007) ("[T]he unique facts of Gall's situation provide support for the District Judge's conclusion that, in Gall's case, 'a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." (citation omitted)).

A.          The Nature of the Offense

The Supreme Court in *United States v. Booker*, found critically important that a defendant's sentence consist of "a strong connection between the sentence imposed and the offender's real conduct." 542 U.S. at 246. Ms. Livolsi pled guilty to Wire Fraud and False and Fraudulent Tax Returns, offenses for which the real conduct elements are neither violent nor dangerous. The PSR recommended a sentence at the low end of the advisory guideline range of 51 months. However, this recommended sentence is greater than necessary. As noted in the PSR, factors do exist that may warrant a departure from the guidelines. *See* PSR at ¶ 121. As explained below a sentence at the low end of the guideline is greater than necessary and does not achieve the goals of 18 U.S.C. § 3553.

B.          **Ms. Livolsi's Character and History Supports Imposing a Sentence
            Which Is Below the Advisory Guideline Range**

Ms. Livolsi's true character and history is that of a loving supportive mother and wife. Even though Ms. Livolsi grew up in a "dysfunctional" family, her children and her husband mean the world to her.

As noted in the PSR, Ms. Livolsi had a "dysfunctional childhood." *See* PSR at ¶ 79. Ms. Livolsi witnessed the physical abuse of her mother at the hands of her father. Ms. Livolsi also became a victim. Not only would her father physically abuse her mother, Ms. Livolsi, as a child and young adult, had to suffer from mental and physical abuse from her father. The abuse Ms. Livolsi suffered throughout her childhood also included sexual abuse. From the age of five until her escape from her household at the age of seventeen, Ms. Livolsi did not have a safe place to call home. While

many young adults will seek employment to enjoy the ability to have spending money for clothes, movies, or just the ability to participate in social activities with their friends Ms. Livolsi worked to survive. Ms. Livolsi knew, even at a young age, that if she wanted to survive and gain independence from her abusive household she had to achieve financial independence. Starting at the age of nine Ms. Livolsi found solace and refuge by working odd jobs. By the time she was thirteen years of age Ms. Livolsi was able to obtain full time employment. At the age of seventeen Ms. Livolsi was ready to leave her home. She was ready to face the world, alone, and leave her dysfunctional upbringing in the rear view mirror.

In 1992, seven years after making it in the world all alone, Ms. Livolsi married John Grogg. Ms. Livolsi strove to have the perfect marriage with Mr. Grogg. As a young girl she had fantasies of what a perfect family life should be like. But her fantasies of a perfect marriage would not last. For twelve years she tried, unsuccessfully, to live her fantasy of that ideal marriage. Unfortunately with all fantasies there has to be an ending and in 2004, Ms. Livolsi and Mr. Grogg dissolved their marriage. Sometime prior to 2004, Ms. Livolsi met William Livolsi. They became friends and during their friendship they discovered that they had the same interest in raising children and building a strong family unit. In 2004, after divorcing Mr. Grogg, Ms. Livolsi married William. They have been blessed with two children, ages eleven and nine. Ms. Livolsi's children are her life. She has provided her children with a safe and loving home, something that Ms. Livolsi never had growing up. She makes sure her children have a childhood, again, something Ms. Livolsi never was able to experience.

Throughout her chronic illnesses Ms. Livolsi has always strived to be a good parent to her children. The fact that Ms. Livolsi is a good parent is a valid consideration under 18 U.S.C. § 3553(a) for a sentence below the advisory guideline range. *See United States. v. Pauley*, 511 F.3d 468, 474 (4th Cir. 2007) (where client pled to possession of child porn and guideline range was 78-97 months, court's downward variance to 42 months affirmed in part because defendant "is a good parent" which is a "valid consideration under § 3553(a)").

Ms. Livolsi has felt true remorse and embarrassment over her choices which led to her indictment. Other than her children and husband, Ms. Livolsi immediate family consist of a younger

brother and sister.  Ms. Livolsi's parents are deceased.  Ms. Livolsi has not been in contact with her sister for years but she maintains contact with her younger brother.  When Ms. Livolsi found out she was indicted for the instant offense she was scared and  did not know how to tell her brother of her actions.  But she had no reason to fear her brother's reaction because he did not turn his back on her. Ms. Livolsi's brother remains very supportive.  He knows that the strength and fortitude she showed as a young child is her true character. Her brother knows the conduct that Ms. Livolsi engaged in is aberrant conduct.   The strong family support that Ms. Livolsi has been receiving will continue to be the strong foundation that she can lean on in the future.  This is an important factor that the guidelines fail to take into consideration.  Because Ms. Livolsi's brother has not shunned her despite learning of her crime, she will less likely feel compelled to remain secretive if tempted to re-offend, rather she will seek the help and support of her brother. *See United States v. Sayad*, 589 F.3d 110 (10th Cir. 2009)(where defendant convicted of interstate delivery of 11 kilograms of cocaine and the guidelines range of 57 months, sentence of probation is reasonable in part because, unlike in most cases, here strong family support will aid in rehabilitation.).

           In accepting responsibility for her conduct Ms. Livolsi has also accepted the most severe punishment for her actions because from the day of her sentencing and for the rest of her life she will be known as a felon.  This is a huge deal for someone who has lived for over forty years as a law abiding citizen without even so much as an arrest to blemish her history in the community and society.  Because Ms. Livolsi has lived a long law abiding life and the stigma of a felony conviction will live with her for the rest of her life provides support for a sentence that is below the guidelines. *See United States v. Smith*,  683 F.2d 1236, 1240 (9th Cir. 1982) ("The stigma of a felony conviction is permanent and pervasive."); *see Ernest Drucker, A Plague of Prisons* (The New Press 2011), at p. 130 ("Having served their formal sentences, ex-prisoners will endure new forms of punishment capable of generating more anger, more shame, and the scars of permanent social stigma….most states…bar many ex-felons from living in public housing, from working in a wide variety of jobs and professions, and from receiving a range of forms of public assistance including school subsides, income support and food stamps…These [are ]enduring disabilities….] ; *United States v. Wulff*, 758 F.2d 1121, 1125 (6th Cir. 1985) ("a felony conviction irreparably damages one's reputation."); *United*

*States. v. Prosperi*, 686 F.3d 32  (1st Cir.  2012) ("Sometimes [courts do not] fully recognize the anguish and the penalty and the burden that persons face when called to account, as these men are, for the wrong that they committed." ).

More importantly, Ms. Livolsi did not let her arrest deter her from continuing to lead a lawful and productive life.  Ms. Livolsi made her initial appearance and was  placed on pretrial release.  Ms. Livolsi has been on pretrial release since December 13, 2010.  During the entire time that Ms. Livolsi has been on pretrial release, she has not violated any of the rules and conditions of pretrial release.   The fact that Ms. Livolsi has not violated any of her conditions of pretrial release is another factor the court can take into consideration.  In *United States v. Munoz-Nava*,  524 F.3d 1137  (10th Cir. 2008), the defendant was facing a guideline sentence of 47-56 months.  *Id*.  The district court sentenced the  defendant to one year and a day in prison, along with a year of home detention.  *Id*.  The court of appeals found the sentence reasonable in part because of defendant's "behavior while on a year-and-a-half pretrial release, which the district court found to be exemplary" and showed that the defendant was unlikely to re-offend.  *Id*. at 1149.  Ms. Livolsi has been on pretrial release for fifty-one months.  As noted above she has not violated any of her terms of pretrial release. The importance of the last four years and three months, shows that Ms. Livolsi understands the consequences of her choices and that she is less likely to re-offend and has been sufficiently deterred from future criminal activity.

Ms. Livolsi's character is that of a survivor.  She may have made some injudicious decisions along the way but she has accepted responsibility for her ill considered choices and is remorseful.  Ms. Livolsi's strong work ethic, starting at a young age, and dedication to her family speaks volumes as to her true character and is a factor this Court may take into consideration.

A sentence of probation will allow Ms. Livolsi to continue to receive strong family support.  Additionally, a sentence of probation will allow Ms. Livolsi to continue to be a pillar of support to her family. It will allow her to gain back her health so that she can work and begin to make restitution payments. Ms. Livolsi has acknowledged the seriousness of this instant matter and is focused on her future well-being and that of her family.  With the emotional support of her family, Ms. Livolsi has the ability to continue to make a positive difference in the community.

1    When considering the positive characteristics and history of Ms. Livolsi and the non-
2    violent nature and circumstances of this offense,  a probationary sentence of five years is sufficient
3    and not greater than necessary to serve the sentencing goals of 18 U.S.C. § 3553.

4
**C.    Ms. Livolsi's Family Ties and Responsibilities Support a Non-Incarceration**
5    **Sentence**

6    Taking Ms. Livolsi out of her family environment for a period of time will not serve
7    a useful social or penal purpose.  Along with taking care of her own health problems, as outlined in
8    the PSR at paragraphs 85-89,  Ms. Livolsi remains a dutiful parent to her minor children.  Other than
9    Mr. Livolsi, no other family member is able or financially capable of providing a home or care to her
10   children.  The love and care that Mr. and Mrs Livolsi provide to their children is crucial.  *See Exhibit*
11   *A*: Sharon Pyle, LPC, Rebound Mental Health: Letter regarding Livolsi Children.  Ms. Pyle has been
12   seeing the Ms. Livolsi's children in individual and joint sessions.  Ms. Livolsi took her children to
13   Ms. Pyle in order to help the children process and understand the real possibility of not having either
14   parent in the home for an extensive amount of time.  In her letter, Ms. Pyle relates to this Court that
15   the Livolsi children are "well connected and bonded with their parents." Ms. Pyle further relates that
16   the children "have strong attachments to their parents and that the children will "benefit from having
17   at least one parent residing with them during their critical developmental years.z'

18   Ms. Pyle's assessment of the importance of having the parents in the home is an
19   important and legitimate factor for this Court to consider.  18 U.S.C. § 3553 and U.S.S.G. § 5H1.6
20   speak to the importance and effect that incarceration may wreck upon a defendant's family.  In district
21   courts across the country, judges have taken into account the adverse effects incarceration has on
22   innocent children.  In *U.S. v Schroeder*, 536 F.3d 746 (7th Cir. 2008)**,** the defendant was convicted
23   of tax fraud and sentenced to 30 months.  The sentence was appealed.  The appellate court vacated
24   in part because the district court had rejected defendant's argument that family circumstances justified
25   a below guideline sentence saying it was his fault for committing the crime. *Id*. at 276.  The appellate
26   court held that "the [district] court's observation that Schroeder's criminal conduct was the cause of
27   the alleged hardship to his daughter is an obvious and not dispositive one, since the culpability of a
28   defendant who appears for sentencing is a given. *Id.*  When a defendant presents an argument for a

lower sentence based on extraordinary family circumstances, the **relevant inquiry is the effect of the defendant's absence on his family members**. *Id.* (Emphasis added). The appellate court further noted that the district court was required to consider Schroeder's family circumstances argument and provide an adequate analysis of how much weight, if any, it should command. *Id.* **The fact that the consequences of incarceration are attributable to his own misconduct may be a factor in the analysis but it is not the sole factor nor is it dispositive**. *Id.* Thus, on remand the district court was ordered to consider whether Schroeder's family circumstances are a mitigating factor.) See, e.g., *United States v. Johnson*, 964 F.2d 124, 129 (2d Cir. 1992) ("The rationale for a downward departure here is not that [the defendant's] family circumstances decrease her culpability, but that we are reluctant to wreak extraordinary destruction on dependents who rely solely on the defendant for their upbringing..." The defendant's responsibility for the adverse effects of his incarceration on his family is not the determinative issue. If it were, there would never be an occasion on which the court would be justified in invoking family circumstances to impose a below-guidelines sentence"); *United States v. Bannister*, 786 F.Supp.2d 617 (E.D.N.Y.,2011) ("Incarceration affects the lives not only of prisoners but of those around them. Families of prisoners face higher rates of divorce, separation, domestic violence, and developmental and behavioral problems among children than the families of non-prisoners. Western & Pettit, *supra,* at 15. Prisoners' children may experience numerous consequences of incarceration, including loss of contact with the incarcerated parent, strained relationships with caregivers, a diminished sense of stability and safety, economic insecurity, social stigma, shame, increased risk of drug involvement, and susceptibility to adverse peer pressure and risky behavior. *See generally* Patricia Allard & Judith Greene, Justice Strategies, *Children on the Outside: Voicing the Pain and Human Costs of Parental Incarceration* (2011), *available at* http://www.justicestrategies.org/sites/default/files/publications/JS–COIP–1–13–11.pdf. These children are at "greater risk of diminished life chances and criminal involvement, and at a greater risk of incarceration as a result." Western & Pettit, *supra,* at 16.")*; United States v. Aguirre*, 214 F.3d 1122 (9th Cir. 2000) (within district court's discretion to depart downward 4 levels for extraordinary family circumstances "based on the fact that there is an 8 year-old son who's lost a father and would be losing a mother for a substantial period of time"); *United States v. Alba*, 933 F.2d 1117, 1122 (2d Cir. 1991)

1   (defendant and wife cared for four and eleven year old and disabled father and paternal grandmother,

2   incarceration could well result in destruction of an otherwise strong family unit).

3          Ms. Livolsi and her husband do not have family members who are able to care for their

4   children if they are both incarcerated. The effect of incarceration of both parents from the home will

5   hinder the developmental growth of the children. *See Exhibit A.* Additionally, the stress of being

6   separated from their parents will inhibit the children's ability to feel emotionally safe. *Id.* Any

7   benefit that would be gained by incarcerating Ms. Livolsi is outweighed by the harm that her prison

8   sentence will have on her children. *See United States v. Husein*, 478 F.3d 318 (6th Cir. 2007)

9   (defendant convicted of participating in drug transactions, where guidelines from a guideline

10  sentence of 40 months to a sentence of one day in prison and 270 days home confinement was

11  warranted in part where district judge properly determined that defendant's family would "benefit

12  more by [defendant's] presence than society is going to benefit from [her] incarceration.").

13         Society would benefit more from Ms. Livolsi's support of her family and presence in

14  the family home than from her incarceration. Especially in light of the fact that there are several

15  alternatives to incarceration that this Court can impose. As in *Johnson*, Ms. Livolsi's request for a

16  below guideline sentence is not to "diminish her culpability but to reduce the wreak of destruction

17  incarceration" will have on her children who rely solely on Ms. Livolsi and her husband for their

18  upbringing. *See Johnson* at 129; *See generally*, *United States v. Kloda*, 133 F.Supp.2d 345 (S.D.N.Y.

19  2001) (father and daughter who filed false tax returns for their business entitled to downward

20  departure in part because of the needs of daughter's small children. **A judge must sentence "without**

21  **ever being indifferent to a defendant's plea** *for compassion, for compassion also is a component*

22  *of justice.*")(emphasis added); *United States v. Tineo*, 2000 WL 759837 (unpub.) (S.D.N.Y. June 8,

23  2000) (downward departure is warranted if "incarceration in accordance with the Guidelines might

24  well result in the destruction of an otherwise strong family unit"). No one can deny that Ms. Livolsi's

25  minor children need the loving and emotional stability of having one, if not both, parents in the home.

26  The incarceration of both parents will cause the needless suffering for the children and, which more

27  importantly, does not promote the ends of justice.

28  ///

Ms. Livolsi's family responsibilities can be considered under U.S.S.G. §5H1.6 and 18 U.S.C. § 3553(a)(1) as an aspect of her character and history.  *See United States v. Menyweather*, 447 F.3d 625 (9th Cir. 2006).  More importantly, Probation was able to identify § 5H1.6 as a factor which would warrant a departure.  Just because probation did not apply § 5H1.6 due to "the offense itself and the large amount of loss" does not mean that 5H1.6 cannot be applied by this Court.  This Court can use its discretion and apply U.S.S.G. § 5H1.6 or 18 U.S.C. § 3553 to fashion a sentence that is sufficient but not greater than necessary.  A sentence which will not destroy the strong family bond.  A sentence which would allow the children to be with at least one of their parents if not both.

**D.      Ms. Livolsi's Chronic Ill Health Supports a Below Guideline Range Sentence.**

An additional, and  important, aspect of Ms. Livolsi 's history and character which should be considered, when formulating a sentence which is sufficient but not greater than necessary, is her chronic ill health.  18 U.S.C. § 3553(a)(2)(D) and U.S.S.G. § 5H1.4 allows this Court to consider the need for medical care when determining a sentence.

As outlined in the PSR,  Ms. Livolsi's serious chronic health issues are well documented. PSR at ¶¶ 85-88.  Since 2010, Ms. Livolsi has been hospitalized, on multiple occasions, and is currently being prescribed over twenty-six medications, vitamins, and over the counter pain relievers.  Ms. Livolsi suffers from extreme debilitating pain from Lupus. *See* PSR at ¶85.   Ms. Livolsi also has a weak immune system due to pneumocystis pneumonia.  PSR at ¶ 87.   Due to pneumocystis pneumonia Ms. Livolsi at times cannot be in public and must isolate herself in her home to protect her immune system.

In *United States v. Edward*, 595 F.3d 1004, (9th Cir. 2010) the court found that a sentence from 27-33 months to probation was not an abuse of discretion, where the defendant had diabetes and other illness. *Id*.  Even though the court found that the Bureau of Prisons was capable of providing for the defendant's medical care it determined that probation would satisfy the requirement of providing needed care in the most effective manner. *Id*. at 1011.  Along with a sentence of probation, the court in *Edwards* sentenced the defendant to seven months of house arrest, a $5,000 fine and restitution of $100,000.   The *Edwards* court found that home confinement was equally as efficient and less costly than incarceration  *Id*.  In *United States v. Wadena*, 470 F.3d

735(8th Cir. 2006), the court held that it was proper for the district court to reduce the sixty-seven year old defendant's sentence from 18-24 months, because of his "chronic health conditions, including hypertension, hearing loss, and cataracts, [and] Type II diabetes and kidney disease, which worsened to the point that the defendant needed dialysis treatment three times a week. *See generally*, *United States v. Nellum*, 2005 WL 300073 (N.D. Ind. Feb. 3, 2005)(unpub). In *United States v. Hein*, 463 F.Supp.2d 940 (E.D. Wisc. 2006), the defendant was convicted of being a felon in possession of ammunition. The court found that the guideline term of 12-18 was "greater than necessary to satisfy the purposes of sentencing" in part because "defendant was in extremely poor health, as evidenced by the medical and vocational records and his receipt of social security and a prison term for one in his condition would be extremely difficult, and that the Bureau of Prisons would be strained in dealing with him"); *see also Brown v. Plata*, 131 S.Ct. 1910, 1928 (2011) ("Just as a prisoner may starve if not fed, he or she may suffer or die if not provided adequate medical care. A prison that deprives prisoners of basic sustenance, including adequate medical care, is incompatible with the concept of human dignity and has no place in civilized society. If government fails to fulfill this obligation, the courts have a responsibility to remedy the resulting Eighth Amendment violation.").

18 U.S.C. § 3553(a)(2)(D) permits this Court to provide medical care in the most effective manner and not only the availability of medical treatment. In *United States v. Coughlin*, 2008 WL 313099 (unpub.) (W.D. Ark. Feb. 1, 2008), the defendant suffered from serious health problems. The court sentenced the defendant to probation and 27 months of home detention. The court reasoned that "Home detention and probation can be severe punishments...hugely restrictive of liberty, highly effective in the determent of crime and amply retributive. . . Probation will facilitate the most effective manner of medical treatment Coughlin can receive while adequately punishing Coughlin for his crimes. Coughlin will be able to receive any medical treatment available without the parameter of the Bureau of Prisons' limited resources." *Id. See also United States v. McFarlin* 535 F.3d 808 (8th Cir. 2008) (defendant was convicted of conspiracy to distribute drugs. Maximum sentence of five years, though guidelines call for 10 years. District court's sentence of probation and home detention for three years not unreasonable in view of defendant's poor health (multiple heart surgeries, etc.).

As noted in the PSR, Ms. Livolsi is forty-six years old. Since 2005 she has been suffering from debilitating health issues. The specialized medical needs of chronically ill defendants has been well documented. The management problems of chronically ill inmates are intensified in the prison setting. Problems arise with the need for special physical accommodations in a relatively inflexible physical environment. *See Correctional Health Care, Addressing the Needs of Elderly, Chronically Ill, and Terminally Ill Inmates, U.S. Department of Justice, National Institute of Corrections*, 2004 edition, pp 9-10. Additionally, the stress of incarceration: efforts to avoid confrontations with fellow inmates, financial stress related to inmate's family and personal circumstances and lack of access to adequate medical care prior to incarceration only helps to accelerate the medical and aging process. *Id.* at 8.

Ms. Livolsi's chronic ill health certainly plays an important factor when determining a reasonable sentence. Ms. Livolsi respectfully requests that this Court, like the court in *Edwards*, take this factor into consideration and sentence her to a below guideline sentence.

**E.    Pursuant to 18 U.S.C. § 3553(a)(7) A Sentence of Probation Would Allow Ms. Livolsi to Make Restitution Payments**

18 U.S.C. § 3553 (a)(7) requires that a judge consider the need to provide restitution to the victim of the offense. *See* 18 U.S.C. § 3553(a)(7). According to the PSR restitution is in the amount of $6,124,436.00. A five-year sentence of probation will allow Ms. Livolsi the ability to pay the money she owes to the victim and the federal government. *See United States v. Bortnick,* 2006 WL 680544 (E.D.Pa., March 15, 2006) (unpub.) (in eight million dollar fraud case where guidelines 51-63 months, one million dollar fine and sentence of **7 days** sufficient in part because "Defendant owes a substantial amount of restitution, which he will be able to pay more easily if he is not subjected to a lengthy incarceration period."); *See United States v. Edwards,* 595 F.3d 1004 (9th Cir. 2010) (defendant convicted of bankruptcy fraud and on probation for prior state conviction for fraud and where guidelines range 27-33 months, sentence of probation seven months of which was to be served under house arrest, along with a fine and restitution payments was not abuse of discretion in part because "the district judge recognized that restitution serves as a deterrent, and that **[t]he term**

1  **of probation imposed will enable [Edwards] to continue working in order to pay the significant**

2  **amount of restitution he ow[e]s.**"); *See United States v. Menyweather*, 431 F.3d 692 (9th Cir.

3  2005)(court departed downward by 8 levels to probation for defendant to be better able to pay

4  restitution to the victims); *United States v. Coleman*, 370 F.Supp.2d 661 (S.D. Ohio 2005)(guidelines

5  were 6-12 months, court sentence to probation and community treatment center and house arrest in

6  part because five years probation, as opposed to one year of imprisonment or imprisonment with

7  supervised release will afford defendant more time to pay restitution); *United States v. Peterson*, 363

8  F.Supp.2d 1060 (E.D. Wisc. 2005)(with a guidelines range 12 to 18 months, the court sentenced

9  defendant to only one day in prison and supervised release of five years so defendant would not lose

10  job and could pay restitution in light of 18 U.S.C. §3553(a)(7).

11      Ms. Livolsi is a non-violent, first time offender and is not a threat to the community.

12  She owes a substantial amount of restitution, which she will be able to pay more easily if she is not

13  subjected to a sentence of incarceration.

14

15  **F.      Seriousness of the Offense, Respect for the Law, Just Punishment**
    **(U.S.S.G. § 3553(a)(2)(A)) and Deterrence to Criminal Conduct (U.S.S.G.**
    **§ 3553(a)(2)(B))**.

16

17      *"Section 3553(a) does not require that the goal of general*
        *deterrence be met through a period of incarceration."* *United*
        *States v. Edwards, 595 F.3d 1004 (9th Cir. 2010)*.

18

19      Ms. Livolsi was indicted and made her first appearance on this offense on December

20  09, 2010. On October 15, 2014, Ms. Livolsi accepted full responsibility for her conduct and pled

21  guilty.   Ms. Livolsi has been on pretrial release for close to five years and she has been in full

22  compliance with her terms and conditions of pretrial supervision.   In the last four years and four

23  months, in addition to the majority of her adult and juvenile life Ms. Livolsi has been active in

24  successfully maintaining a law abiding life. She is active in her children's lives and in caring for her

25  declining health. In, *United States v. Coughlin*, 2008 WL 313099 (unpub.) (W.D. Ark. Feb. 1, 2008)*,

26  the court found that "home detention and probation can be severe punishments . . . hugely restrictive

27  of liberty, highly effective in the determent of crime and amply retributive. *Id* at *5.  The *Coughlin*

28  court further noted that Coughlin's sentence will "subject him to DNA collection, home intrusion and

an utter lack of autonomy... he has been restricted to within 10 feet of his residence." *Id.* at *6. Additionally, the *Coughlin* court noted that Probation officers will enter his home to check the electronic monitoring system and that the electronic monitoring prevents Coughlin from reaching and roaming his property. *Id*. The *Coughlin* court also noted that the defendant will only be "permitted to leave his property only on a handful of occasions for church, medical appointments, legal consultations . . . On all those occasions, Coughlin was subject to reporting requirements, and his movement was closely monitored and recorded with GPS equipment. *Id*. The *Coughlin* court stressed that a sentence of probation was far from an act of leniency, and its characterization as such deprives sentencing courts of a valuable and effective form of punishment. *Id.*

As noted above Ms. Livolsi has taken this offense very seriously. She has not violated any other laws since her arrest for this instant matter. She has no prior arrest record. Her long history of living a law abiding lifestyle makes a sentence that includes incarceration greater then necessary. As noted above there exists other forms of punishment which make incarceration greater than necessary. More importantly, the deterrent value of a period of incarceration has lessened as the course of time (between five and eight years prior)has gone by and proves that Ms. Livolsi does not need to suffer a period of incarceration to deter her from further criminal conduct.

**G.      Ms. Livolsi Presents a Low Risk for Recidivism, Therefore a Sentence Which Includes Incarceration Is Far Greater than Necessary**

Defendants "over the age of forty... exhibit markedly lower rates of recidivism in comparison to younger defendants See *Measuring Recidivism: The Criminal History Computation Of The Federal Sentencing Guidelines,* at 12, 28 (2004) *www.ussc.gov/publicat/Recidivism_General.pdf*. ("Recidivism rates decline relatively consistently as age increases," from 35.5% under age 21 to 9.5% over 50)

Due to Ms. Livolsi's age she presents a low risk of recidivism. A sentence which includes incarceration is greater than necessary and a sentence to probation is appropriate due to Ms. Livolsi's criminal history score of zero. There is no indication that Ms. Livolsi poses a risk of recidivism. No compelling rehabilitation need would be served by any term of incarceration. At the age of forty-six the likelihood of recidivism by Ms. Livolsi is very low.

/ / /

1    In 2004, the United States Sentencing Commission released a Report entitled

2    "Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines."

3    *See* Exhibit B, recidivism exhibit tables, from "Measuring Recidivism: The Criminal History

4    Computation of the Federal Sentencing Guidelines(2004)," pages 28-32( available at

5    http://wwww.ussc.gov/pblicat/Recividism_General.pdf) (hereinafter the "USSC Recidivism Study").

6    According to the USSC Recidivism Study,  recidivism rates decline consistently as age increases.

7    Generally the younger the offender, the more likely the offender to recidivate. *Id.* at 12.   Among all

8    offenders under the age of 21 recidivism rate is 35.5%, while offenders over the age of 40 have a

9    recidivism rate of 12.7%. *Id.* at 29.   For criminal history category I offenders, like Ms. Livolsi the

10   recidivism rate  greatly decreases from 29.5% for all offenders under the age of 21 to 6.9% for

11   offenders over the age of 40. *Id.*

12   Under the guidelines, the age of the offender is not ordinarily relevant in determining

13   the sentence. *See* U.S.S.G. § 5H1.1.   However, under U.S.S.G. § 3553(a)(2)(C), the age of the

14   offender is plainly relevant to the issue of protecting the public from further crimes of the defendant.

15   The rate of recidivism was also reviewed by employment status, educational

16   attainment, marital status and illicit drug use. *Id.* at 29.   According to the USSC Recidivism Study,

17   for criminal history category I offenders, like Ms. Livolsi who are married, and who do not use drug,

18   the recidivism rate decreases.  *Id* at 29.   For example:

19   Category I Percent Recidivating:
            Education
20          Less than High          21.3%
            School
21          High School             10.6 %(Ms. Livolsi)
            Marital Status
22          Never Married           22.7%
            Legal Marriage          9.8% (Ms. Livolsi)
23          Other                   12.9%
            Illicit Drug Use
24          No Illicit Drug Use     10.8% (Ms. Livolsi)
            Illicit Drug Use        21.9%
25   *Id*.

26   The USSC Recidivism report also detailed  the recidivism rate by offense

27   characteristics and offense levels.   According the the USSC Recidivism report Category  I offenders

     who had an offense level of 24 the rate of recidivism was 13.3%.   Category I Fraud offenders also

28   had the lowest rate of recidivism at only 9.3%. *Id.* at 30.

Pursuant to the Sentencing Commissions Report the rate of recidivism for Ms. Livolsi is extremely low. Ms. Livolsi's age, marital status, employment history and non drug use presents a low risk of recidivism. A guideline range of 51 months of incarceration is greater than necessary and a sentence to probation is appropriate due to reasons stated above. Additionally, no compelling rehabilitation need would be served by any term of incarceration.

**H.**     **Ms. Livolsi's First Felony Conviction Is a Factor Pursuant to 3553(a)**
          **That this Court Should Consider When Formulating a Reasonable Sentence**

28 U.S.C. § 994(j) speaks to the appropriateness of a sentence of imprisonment for a first offender. In 28 U.S.C. § 994(j) Congress stressed "the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense." Based on the information below Ms. Livolsi's history and characteristics makes her the type of defendant that Congress had in mind when it promulgated 28 U.S.C. § 994(j).

In 2004, the United States Sentencing Commission released a Report entitled *Recidivism and the First Offender*. *See* Exhibit C, recidivism exhibit tables, from " Recidivism and the "First Offender"(2004)( available at http://www.ussc.gov/pblicat/Recividism_FirstOffender.pdf) (hereinafter the "USSC First Offender Study"). According to the USSC First Offender Study, the proper application of 3553(a) in the case of a true offender strongly supports a below guideline sentence. The USSC First Offender Study studied recidivism rated among offenders with little or no criminal history prior to the federal instant offense. The study separated these offender into three distinct Groups, groups A, B and C.

Group A offenders had no prior arrests or convictions, like Ms. Livolsi. Group B offenders had prior arrest but no prior convictions. Group C offenders, have a majority of prior convictions that fall under the minor offenses listed in guideline section 4A1.2(c)(2). *See* First Offender Study at page 5. As noted in the PSR, Ms. Livolsi has no prior arrests or convictions. Ms. Livolsi falls within Criminal History Category I, with zero criminal history points. *See* PSR at ¶ 72. Pursuant to the USSC First Offender Study Ms. Livolsi falls within Group A. As a Group A offender, the Recidivism rate for Ms. Livolsi is 6.8 percent with 93.2 percent who did not recidivate. *See* Exhibit C, recidivism exhibit tables, from USSC First Offender Study, pages 26-28 ( available at

http://wwww.ussc.gov/pblicat/Recividism_FirstOffender.pdf)   Group A offenders had a lower recidivism rate than offenders in Group B or Group C.  Group A recidivism rate was 6.8 percent. The recidivism rate for Group B offenders was at 17.2 percent and Group C was 8.8 percent *See* First Offender Study at page 17.   When applying the USSC First Offender Study report factors to U.S.S.G. § 3553(a)(2)(C)and (a)(6) , a sentence of five years probation is sufficient and not greater than necessary because the empirical data compiled by the USSC shows that recidivism risk for offenders with zero criminal history is lowest  for offenders with the least experience in the criminal justice system.

Pursuant to the USSC First Offender Study, the  rate of recidivism for Ms.  Livolsi is extremely low.  Ms. Livolsi's criminal history category, by the Commissions own report, provides a statistical study which firmly supports a sentence of five years probation.  Ms. Livolsi is not likely to recidivate and a term of imprisonment of 51 months, in order to protect the  public from further crimes of the defendant is greater than necessary. A guideline range of 51 months of incarceration is greater than necessary and a sentence of five years probation is appropriate due to the reasons stated above.  Additionally, no compelling rehabilitation need would be served by a 51 month sentence of incarceration.

I.        **Protection of the Public From Further Crimes of The Defendant (U.S.S.G. § 3553(a)(2)(C)).**

Ms. Livolsi's conduct, prior to and after her indictment,  is strong proof that Ms. Livolsi's has rehabilitated herself and a sentence of probation is sufficient and not greater than necessary.  When analyzing 18 U.S.C. § 3553(a)(2)(C) it is not about protecting the public from future crimes in general but from future crimes of the defendant.  The empirical data provided by the United States Sentencing Commission, and as noted above in this memorandum, provides statistical proof that Ms. Livolsi is not likely to commit further crimes.

But this Court does not have to rely solely on the empirical data from the United States Sentencing Commission. Ms. Livolsi falls in Criminal History Category I, with zero criminal history points.  This shows that the illegal conduct that Ms. Livolsi engaged in was aberrant conduct.  Ms. Livolsi  has lived a law abiding life for the majority of her life.   She acted outside the norm of her nature and engaged in illegal conduct.  Ms. Livolsi has not had any further contact with law

18

enforcement since her arrest for this instant offense.  Ms. Livolsi has been on pretrial release conditions since 2010 and has not violated one condition of her terms of pretrial release.  Ms. Livolsi's conduct in the last four years and three months shows that she is not a threat to the public, nor should there be a fear that she will commit future crimes. Ms. Livolsi's conduct since she committed the instant offense shows that a term of imprisonment is far greater than necessary to fulfill 3553(a)(2)(C).

A lengthy term of probation (five years) also reduces the risk that Ms. Livolsi will re-offend and deter her from future criminal conduct. Ms. Livolsi's conduct for the last fifty one months (the same length of time as the low end of her guideline range) reflects her effort to atone, to turn her life around and to rehabilitate herself.  Ms. Livolsi has a further strengthened her commitment to her family and wants to continue to prove that she is a contributing member of society.

**J.**      **18 U.S.C. § 3553(a)(3) Allows this Court to Consider the Kinds of Sentences Available**.

"It is the policy of the United States Congress, clearly expressed in law, that dependants not be sent to prison or held there for a specific length of time for the sole purpose of rehabilitation.  Instead that legitimate goal of sentencing is to be accomplished through other authorized forms of punishment." *United States v. Manzella*, 475 F.3d 152, 161 (3rd Cir. 2007).

"Legislative history does not consider a sentence of imprisonment to be the only form of sentence that may effectively carry deterrent or punitive weight.  It may very often be that release on probation under conditions designed to fit the particular situation will adequately satisfy any appropriate deterrent or punitive purpose." *United States v. Edwards*, 595 F.3d at, 1017 (9th Cir. 2010)(quoting S.Rep.No.98-225, at 92 (1983).

This Court is not statutorily prohibited from sentencing Ms. Livolsi to a term of probation for violating 18 U.S.C. § 1343 and 26 U.S.C. § 7206(1). The maximum term of imprisonment for violating 18 U.S.C. § 1343 and 26 U.S.C. § 7201 is five years. Pursuant to section 18 U.S.C. §3581, Ms. Livolsi pled guilty to a class C felony and a class E felony.  When a defendant has been found guilty of a class C and E felonies, the defendant may be sentenced to a term of probation.  *See* 18 U.S.C. § 3561(c)(1).  The maximum amount of probation that a court may impose is five years.

Here, a probationary term of five-years is reasonable and no greater than necessary. If Ms. Livolsi is placed on probation she would be under supervision for 60 months. This is nine months longer than the low end of the guideline range. More importantly for the last fifty-one months, again same length of the low end of her guideline range, Ms. Livolsi has shown that she can obey the laws of this court and society. Incarceration is not necessary. Probation with conditions can be onerous and sufficient punishment. In *Gall v. United States*, 552 U.S. 38 (2007), the court determined that a sentence of probation was "a substantial restriction of freedom." The court further stated that "custodial sentences are qualitatively more severe than probationary sentences of equivalent terms. Offenders on probation are nonetheless subject to several standard conditions that **substantially restrict their liberty**.... Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking.... Most probationers are also subject to individual "special conditions" imposed by the court". *Id.*; *See also United States v. Whitehead*, 532 F.3d 991 (9th Cir. 2008) (9th Cir. 2008) (defendant was convicted of supplying counterfeit access cards causing loss of $1 million dollars. Guidelines were 41-51 months. The court's sentence of probation with **"substantial amount of community service"** -1000 hours—and substantial restitution is not abuse of discretion where "the court heard from Whitehead and his father, who told the court how Whitehead repented his crime; how he had, since his conviction, devoted himself to his house-painting business and to building an honorable life; how his eight-year-old daughter depended on him; and how he doted on her. In addition, the court took into account its finding that Whitehead's crime "[di]d not pose the same danger to the community as many other crimes. These are all considerations that the district court may properly take into account. *See* 18 U.S.C. § 3553(a)(1)-(2).") Here the goals of 18 U.S.C. § 3553(a) will still be satisfied because incarceration is not an appropriate means of promoting correction. . . . *See* 18 U.S.C. § 3582(a).

Another factor to take in consideration is that if Ms. Livolsi were to violate any terms of probation, this Court would have the ability to sentence her pursuant to Subchapter A and sentence

her to any sentence that is available under Subchapter A, without regard to any time she has spent on probation. In other words, Ms. Livolsi would not receive any credit towards her sentence for the period of time that she was on probation or pre-trial release. Ms. Livolsi would once again face a guideline range of 51 to 63 months imprisonment. Therefore, pursuant to 18 U.S.C. § 3553(a)(3)a five-year term probation would be sufficient and no greater than necessary.

**CONCLUSION**

For the reasons stated above Ms. Livolsi respectively requests that this Court fashion a just sentence. Ms. Livolsi respectively requests a sentence that is "just" but which also includes mercy and compassion. A sentence of five years probation with a significant period of home detention, along with any other conditions the Court may order, is sufficient and no greater than necessary.

Respectfully submitted,

RENE VALLADARES
Federal Public Defender

By:   /s/ Monique Kirtley
MONIQUE KIRTLEY
Assistant Federal Public Defender
Counsel for Linda Livolsi

## CERTIFICATE OF ELECTRONIC SERVICE

The undersigned hereby certifies that I am an employee of the Federal Public Defender for the District of Nevada and am a person of such age and discretion as to be competent to serve papers.

That on April 14, 2015, I served an electronic copy of the above and foregoing **DEFENDANT'S SENTENCING MEMORANDUM**, by electronic mail to the persons named below:

DANIEL G. BOGDEN
United States Attorney
J. Gregory Damm
Assistant United States Attorney
333 Las Vegas Blvd. So., 5th Floor
Las Vegas, Nevada 89101

U.S. Probation Officer


      /s/ Nancy Vasquez, Legal Secretary
Employee of the Federal Public Defender